UNITED STATES DISTRICT COURT  08 civ 5664
SOUTHERN DISTRICT OF NEW YORK  **Judge Hellerstein**
------------------------------------------------------------X
FREDERICK DONOVAN and JOHNNY BANKS
                       Plaintiffs,  **COMPLAINT**

    -against-

NEW YORK CITY, DETECTIVE BOKINA,
DETECTIVE AUTERA and UNIDENTIFIED
POLICE OFFICERS,  **JURY TRIAL DEMANDED**

                       Defendant(s).
------------------------------------------------------------X

      The plaintiffs, complaining of the defendants, by their attorney, FRED LICHTMACHER, ESQ., respectfully show to this Court and alleges:

## JURISDICTION

1    Jurisdiction is founded upon the existence of a Federal Question.

2    This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983.

3    Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3 & 4).

4    Venue is appropriate pursuant to 28 U.S.C. Sections 1391 (b) (1 & 2).

5    That this Court has jurisdiction to hear plaintiffs' state claims pursuant to 28 U.S.C. Section 1367.

## PARTIES

6    That the plaintiffs, FREDERICK DONOVAN and JOHNNY BANKS, are residents of the County of Queens in the City and State of New York and that they are both African-American males.

7    Upon information and belief, that at all times hereinafter mentioned, the defendant, CITY OF NEW YORK, (NYC) was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant defendants DETECTIVE BOKINA, DETECTIVE AUTERA and UNIDENTIFIED POLICE OFFICERS were

acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

8    Upon information and belief, that at all times hereinafter mentioned, defendants were employed by the defendant, NYC, as members of its police department.

9    Upon information and belief, that at all times hereinafter mentioned, the defendant, NYC, its agents, servants and employees operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT (NYPD), including all the police officers thereof.

10    The NYPD, is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the commissioner of the NYPD is responsible for the policies, practices and customs of the NYPD as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees and is the final decision maker for that agency.

11    This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

12    Each and all of the acts of the defendants alleged herein were done by the defendants, acting as state actors acting under the color of law.

## STATEMENT OF FACTS

13    On January 1, 2006 at approximately 2:30 am there was a shooting outside of 3-15 27th Ave in Astoria, New York.

14    Plaintiff Johnny Banks' brother Kendell Scott was shot as was Joseph Williams.

15    Plaintiff Banks, with a friend, took Kendell Scott to Astoria General Hospital.

16    At the hospital Scott and Williams both died.

17    On January 17, 2006 police officers came to Banks' parents' home in New Jersey and brought him to the 114th precinct where he was arrested.

18    On January 17, 2006 Donovan was arrested in his home by Bokina and several unidentified

officers.

19      When he was brought to the 114th precinct, Donovan was left handcuffed for at least seventeen hours.

20      Bokina interrogated Donovan, intimidated him and used physical force and coercion in an attempt to get Donovan to both confess to crimes he did not commit and to implicate Banks in crimes he did not commit.

21      Donovan was not allowed to eat, drink or use the bathroom for in excess of seventeen hours in a tactic aimed at coercing a confession.

22      After approximately seventeen hours, Donovan signed a coerced statement falsely implicating Banks in shooting a gun, which was not true, but which Donovan signed in response to the abuse to which Bokina was subjecting him.

23      Bokina generated and signed a document wrongfully charging plaintiffs with three counts of murder in the Second Degree, one count of kidnaping, two counts of criminal use of a firearm in the first degree, two counts of criminal possession of a weapon in the second degree, two counts of criminal possession of a weapon in the third degree and assault in the second degree although he did not have information the plaintiffs committed the aforementioned crimes, and in fact, plaintiffs had not committed the crimes.

24      Plaintiffs were alleged to have shot a male in the leg despite the fact that no one was shot in the leg.

25      Bokina was lead investigator into the double murder.

26      One week after the plaintiffs were first arrested, Bokina and Autera met with eyewitness Robert Bryan, who provided information to the defendants exonerating the plaintiffs.

27      The eyewitness did not place the plaintiffs on the scene of the crime.

28      The eyewitness exonerated the plaintiffs of all the crimes they were accused of.

29      Bokina and Autera failed to disclose to the Assistant District Attorney (ADA) that they had spoken with eyewitness Robert Bryan on January 25, 2006 and that he was shown photographs of

the plaintiffs and that he did not place them on the scene of the crime.

30      Bokina and Autera failed to disclose to the ADA that they had spoken with eyewitness Robert Bryan on January 25, 2006 and that he was shown photographs of the plaintiffs and that he had exonerated them of any criminal wrongdoing at that time.

31      Bokina and Autera either hid, destroyed, failed to generate and/or failed to disclose their DD-5's to the ADA which were crucial Brady material, resulting in the plaintiffs not having said materials and information available to them to present to the grand jury, for the pretrial proceedings as well as for trial.

32      Despite generating numerous DD-5's regarding their interviews of all the other witnesses, the crucial aforementioned DD-5 generated by the defendants was never produced.

33      At trial, during cross examination, it was revealed to the plaintiffs for the first time that the undisclosed interview of Bryan had taken place two years and four months earlier.

34      At trial defendants were forced to acknowledge they had met with the undisclosed eyewitness when they were confronted with entries made by Bokina in a police document.

35      At trial, Bokina first denied meeting with the witness and denied ever talking with Bryan anywhere at anytime.

36      The Court questioned Bokina asking if he ever went to a law office to interview Bryan, and Bokina said "No," and said that he had never gone to a lawyer's office to interview a witness in a criminal case.

37      However, on cross examination of Bokina by Banks' attorney, Bokina admitted the Movement Log, written by him, shows he did attend the meeting with Autera at the Brooklyn office of Bryan's attorney on January 25, 2006.

38      Plaintiffs, who had not received the Brady material, were denied the opportunity to present the exculpatory evidence to the grand jury, causing their bogus indictment.

39      In the unlikely event they would have been indicted if they had been able to present the aforementioned exculpatory evidence to the grand jury, plaintiffs were still denied the opportunity

to present the exculpatory evidence to the Court resulting in their being denied bail.

40      Without the benefit of the exculpatory evidence, both plaintiffs were indicted pursuant to Indictment No. 813/2006.

41      The plaintiffs were indicted for the crimes of PL 125.25-1 Murder in the Second Degree PL 125.25-2;Murder in the Second Degree PL 125.25-3 Murder in the Second Degree PL 135.20 Kidnaping in the Second Degree; PL 265.03-2 Criminal Possession of a Weapon in the Second Degree; PL 265.03-2 Criminal Possession of a Weapon in the Second Degree; PL 265.02-4 Criminal Possession of a Weapon in the Third Degree PL 265.02-4 Criminal Possession of a Weapon on the Third Degree PL 120.05-2 Assault in the Second Degree.

42      After the exculpatory evidence first appeared at trial, the ADA changed his theory of the case including no longer contending that either plaintiff was the shooter.

43      After a five week trial, the jury deliberated for a short while and exonerated the plaintiffs on every charge presented to them.

44      Both plaintiffs were continuously incarcerated from the dates they were initially arrested until they were exonerated on May 2, 2008.

45      That on or about May 8, 2008, a notice of claim was served on the Comptroller of the City of New York on behalf of Banks, and that as of this date plaintiff's demand for payment has not yet been addressed by the defendants and no 50-H hearing has yet been conducted.

46      That on or about May 8, 2008, a notice of claim was served on the Comptroller of the City of New York on behalf of Donovan, and that as of this date plaintiff's demand for payment has not yet been addressed by the defendants and no 50-H hearing has yet been conducted.

47      That more than thirty days have elapsed since the service of the aforementioned notices of claims for the plaintiffs and that adjustment or payment thereof has been neglected or refused.

48      That the state claim in this cause of action is commenced within one year and ninety days of when this cause of action arose as to plaintiffs and that the federal claims are brought in a timely manner within three years of the date they accrued.

**AS AND FOR A FIRST CAUSE OF ACTION
ON BEHALF OF PLAINTIFFS
VIOLATION OF THE PLAINTIFFS' RIGHTS PURSUANT TO
42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
FALSE ARREST**

49   Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

50   That the plaintiffs' rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that plaintiffs were subject to being falsely arrested by the defendants.

51   That the defendants confined the plaintiffs, in that plaintiffs were not free to leave, defendants intended to confine plaintiffs, plaintiffs were conscious of confinement, plaintiffs did not consent to confinement and confinement was not otherwise privileged.

52   As a direct result of defendants' actions, plaintiffs were deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments of the United States Constitution being more particularly plaintiffs' right to be free from arrest without probable cause.

53   That the said false arrests were caused by the defendants, without any legal justification, without authority of the law and without any reasonable cause or belief that the plaintiffs were in fact guilty of crimes.

54   That various defendants who knew of the false arrests and allowed the illegal detentions of the plaintiffs to continue, are liable to the plaintiffs via their failure to act pursuant to their affirmative duty to intervene.

55   That by reason of the unlawful false arrests, the plaintiffs were subjected to pecuniary harms, they lost their jobs, they were subjected to great indignities, humiliation, anxiety, they were forced to appear in court and at a criminal trial, they spent time in jail, they were prevented from conducting her normal affairs of business and she was subjected to numerous other harms.

56   That defendants who are supervisors within the NYPD who knew of the false arrests and

continued to allow and/or participate and/or cause the arrests of the plaintiffs and who either directly participated in the violation of plaintiff's rights or who after learning of the violation failed to remedy the wrong are liable to the plaintiffs for the violation of their rights pursuant to the Fourth Amendment and via the principle of supervisor liability.

57   That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed ONE HUNDRED THOUSAND ($100,000.00) DOLLARS, they are entitled to awards of punitive damages and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

**AS AND FOR A SECOND CAUSE OF ACTION
ON BEHALF OF PLAINTIFFS
VIOLATION OF THE PLAINTIFFS' RIGHTS PURSUANT TO
42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
MALICIOUS PROSECUTION**

58   Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

59   That the plaintiffs' rights have been violated under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C.§1983, in that the plaintiffs were maliciously prosecuted by the defendants.

60   That the said malicious prosecution was initiated by the defendants, their agents, servants and employees, without any legal justification and without probable cause in that the defendants caused the commencement and continuation of criminal proceedings against the plaintiffs, the proceedings terminated in favor of the plaintiffs via an acquittal and in that the action was commenced and continued intentionally and with malice and deliberate indifference to plaintiffs' rights.

61   That by reason of the unlawful malicious prosecution, the plaintiffs were subjected to pecuniary harms, great indignities, humiliation, anxiety, they were forced to spend two years and four months in jail as well as being forced to appear at trial, they lost their jobs and they were subjected to numerous other harms.

62   That the indictment of the plaintiffs was secured by the suppression of evidence and/or the

destruction of exculpatory evidence which was revealed at trial and other bad faith police misconduct committed by the defendants.

63    That the defendants either destroyed, hid or failed to generate evidence as to plaintiffs' innocence which they were clearly aware of via an interview with an eyewitness.

64    That the defendants either destroyed, hid or failed to generate Brady and Rosario materials.

65    That the destroying, hiding and/or failing to generate the evidence of plaintiffs' innocence was done deliberately to influence the prosecutor to prosecute as well as the jury's decision and to coverup the fact that said defendants had earlier arrested two innocent men and by so doing the defendants' violated the plaintiffs' constitutional right to a fair trial.

66    That had the defendants not destroyed, hid and/or failed to generate documentation of the exculpatory evidence, plaintiffs would not have been indicted.

67    That had the defendants not destroyed, hid and/or failed to generate documentation of the exculpatory evidence, plaintiffs would not have been prosecuted.

68    That had the defendants not destroyed, hid and/or failed to generate documentation of the exculpatory evidence, if plaintiffs had been indicted, they would not have been held without bail for two years and four months.

69    That all the defendants who knew of the commencement and continuation of the malicious prosecution of the plaintiffs and the destroying, failing to generate and/or the hiding of exculpatory evidence are liable to the plaintiffs via their failure to exercise their affirmative
duty to intervene.

70    That defendants Unidentified New York City Police Officers who are supervisors within the defendant NYC's Police Department, who knew of the malicious prosecution and the suppression of exculpatory evidence and who continued to allow and/or participate in the prosecution of the plaintiffs and who either directly participated in the violation of plaintiffs' rights or who after learning of the violation failed to remedy the wrong are liable to the plaintiffs for the violation of their rights pursuant to the Fourth Amendment.

71    That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed THREE MILLION ($3,000,000.00) DOLLARS (each), they are entitled to awards of punitive damages and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

**AS AND FOR AN THIRD CAUSE OF ACTION
ON BEHALF OF PLAINTIFFS
VIOLATION OF PLAINTIFFS' RIGHTS PURSUANT TO
NEW YORK STATE LAW VIA
MALICIOUS PROSECUTION**

72    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

73    That plaintiffs' rights have been violated, pursuant to the law of the State of New York via a malicious prosecution by the defendants.

74    That the defendant NYC is vicariously liable to the plaintiffs for the individual defendants' common law torts via the principle of *respondeat superior*.

75    That New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

76    That the said malicious prosecution was initiated by the defendants, their agents, servants and employees, without any legal justification and without probable cause in that the defendants caused the commencement and continuation of criminal proceedings against the plaintiffs, the proceedings terminated in favor of the plaintiffs via an acquittal and in that the action was commenced and continued intentionally and with malice and deliberate indifference to plaintiffs' rights.

77    That by reason of the unlawful malicious prosecution, the plaintiffs were subjected to pecuniary harms, great indignities, humiliation, anxiety, they were forced to spend two years and four months in jail as well as being forced to appear at trial, they lost their jobs and they were subjected to numerous other harms.

78    That the indictment was secured by the suppression of evidence and/or the destruction of exculpatory evidence which was revealed at trial and other bad faith police misconduct committed

by the defendants.

79     That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed THREE MILLION ($3,000,000.00) DOLLARS (each) and they are entitled to an award of punitive damages and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF DONOVAN VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT VIA THE USE OF EXCESSIVE AND UNREASONABLE FORCE AND UNREASONABLE TERMS OF HIS CONFINEMENT

80     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

81     That the plaintiffs' rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that plaintiff Donovan was unlawfully subjected to excessive and unreasonable force, by the defendants as well as to unreasonable terms and conditions of his confinement by the defendants.

82     That the said behavior was effected by the defendants without authority of law and without any reasonable necessity to use any force and the force employed was used without legal justification, without plaintiffs' consent, with malice and with an intent to inflict pain and suffering.

83     That the defendants intentionally and maliciously withheld food and drink from the plaintiff creating an unreasonable confinement.

84     That the defendants intentionally and maliciously did not allow Donovan to use the bathroom for close to an entire day creating an unreasonable confinement.

85      As a direct result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth Amendment of the United States Constitution being more particularly plaintiffs' right to be free from the use of excessive and unreasonable force and unreasonable terms

and conditions of his confinement.

86    That by reason of the violations of his Constitutional rights the plaintiff was harmed physically and emotionally he was subjected to physical pain, humiliation, embarrassment, anxiety, and he was subjected to various ongoing physical and emotional harms, and that he was otherwise harmed.

87    That by reason of the aforesaid, the plaintiff has been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS, and he is entitled to an award of punitive damages, and that an award of attorneys' fees is appropriate pursuant to 42 U.S.C. §1988.

**WHEREFORE**, plaintiffs demand judgment against the defendants in a sum not to exceed ONE HUNDRED THOUSAND ($100,000.00) DOLLARS (each) and punitive damages on the First Cause of Action; THREE MILLION ($3,000,000.00) DOLLARS (each) and punitive damages on the Second Cause of Action; in a sum not to exceed THREE MILLION ($3,000,000.00)) DOLLARS (each) and punitive damages on the Third Cause of Action, and in a sum not exceed ONE MILLION ($1,000,000.00) DOLLARS (Donovan only) and punitive damages on the Fourth Cause of Action along with reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 on plaintiffs' federal cause of actions together with costs and disbursements of this action; a trial by jury of all issues involved in this complaint; and such other and further relief as this Court may deem just and proper under the circumstances.

Dated: June 24, 2008
      New York, New York

                        / s /
                        FRED LICHTMACHER (FL-5341)
                        Attorney for Plaintiffs
                        The Empire State Building
                        350 5th Avenue Suite 7116
                        New York, New York 10118
                        (212) 922-9066

To:    Michael Cardozo
        Corporation Counsel City of New York
        100 Church Street
        New York, New York 10007